UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RAQUEL WIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 14-12972-LTS |
| | ) | |
| TUFTS MEDICAL CENTER, INC., | ) | |
| and ALEX AMAMCHUKWU | ) | |
| | ) | |
| Defendants. | ) | |

ORDER ON DEFENDANTS' MOTION FOR SUMARY JUDGMENT (DOC. NO. 42)

March 14, 2016

SOROKIN, J.

Plaintiff Raquel Wiggins ("Wiggins") filed a Complaint against Defendants Tufts Medical Center, Inc. ("TMC") and Alex Amamchuckwu ("Amamchukwu") (collectively "Defendants") stemming from Amamchukwu's allegedly inappropriate conduct while supervising Wiggins.  Doc. No. 1.  Wiggins brings sexual harassment and retaliation claims against each Defendant under both Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e, et. seq., and Mass. Gen. Laws ch. 151B.  Doc. No. 1.  She also brings sex discrimination claims against TMC under both those statutes.  Id. at 4, 6.  Defendants move for summary judgment on all claims.[1]

---

[1] Because "[t]he Massachusetts Supreme Judicial Court has said that it is 'our practice to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. ch. 151B,'" Ponte v. Steelcase Inc., 741 F.3d 310, 319 n. 9 (1st Cir. 2014) (quoting Wheatley v. Am. Tel. & Tel. Co., 636 N.E.2d 265, 268 (1994)), and because Wiggins "does not argue that the two claims should be treated differently," id., the Court relies on federal law interpreting Title VII in resolving this motion.

The primary issue presented is whether Wiggins advances sufficient evidence to support the conclusion that she suffered from a "severe and pervasive" hostile work environment, measured from the perspective of an objectively reasonable person, during the six weeks she worked in the Pre-Certification department while Amamchukwu served as a supervisor. Although the question is close, the motion in this respect, as to Counts I, IV, VII, and IX, is DENIED.  The evidence, viewed in the light most favorable to Wiggins, shows that Amamchukwu: "stroked" the entire length of Wiggins' long braids; pinched her facial cheeks on more than one occasion; sexually stared at Wiggins' body up and down on more than one occasion; and called Wiggins "pretty face" regularly, often while standing inappropriately close to her.  Doc No. 51-2 at 59, 60, 118, 120, 133, 136, 137, 140, 148.  Hostile work environment claims are "fact-specific."  Billings v. Town of Grafton, 515 F.3d 39, 49 (1st Cir. 2008); accord id. ("Thus, while [prior cases] serve as instructive examples of actionable sexual harassment, they do not suggest that harassing conduct of a different kind or lesser degree with necessarily fall short of that standard.").

For the same reason, Plaintiffs' claims of sexual discrimination survive summary judgment insofar as they are premised on the hostile work environment claim.  There is, however, no evidence of sexual harassment or discrimination apart from the hostile work environment.  Accordingly, the Motion is ALLOWED regarding Counts II and V as to the harassment and discrimination claims except to the extent they arise from the alleged hostile work environment.

Finally, Wiggins advances retaliation claims.  To prevail on her retaliation claims, Wiggins "must prove, among other things, that [s]he suffered an 'adverse employment action' on

account of a protected activity."  Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010).[2]  Wiggins posits two adverse actions: "(1) Tufts clearly failed to take prompt remedial action in accord with their own policies and procedures, and otherwise, the harassment continued unabated, and (2) Tufts essentially demoted Wiggins to her former position and refused to let her come back to the Pre-Certification Department."  Doc. No. 50 at 15.

"The Supreme Court has made it pellucid that the category of adverse actions sufficient to trigger Title VII's antiretaliation provision 'is not limited to discriminatory actions that affect the terms and conditions of employment.'"  Ahern v. Shinseki, 629 F.3d 49, 55 (1st Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006)).  Adverse actions "must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington N., 548 U.S. at 57.  "Thus, whether an action is materially adverse is judged by an objective standard rather than a subjective standard."  Booker v. Mass. Dep't of Pub. Health, 612 F.3d 34, 43 (1st Cir. 2010).

At first blush, Wiggins's departure from the Pre-Certification Department appears to be an adverse action.  TMC characterized Wiggins's move to the Pre-Certification Department as a promotion.  Doc. No. 44 ¶ 4.  Likewise, a reasonable jury could believe her assertion that the Pre-Certification Department offered her better opportunities for education and advancement.  Doc. No. 51-2 at 281.  However, TMC did not force Wiggins from the Pre-Certification Department.  The undisputed record reveals that she: could have chosen to return there, Doc. No. 44 ¶ 40; chose to transfer to the Referrals Department instead, id. ¶ 42; could transfer back if she

---

[2] There is no dispute she engaged in protected activity or that it bears a causal connection to the alleged adverse action.

wants to, id. ¶ 53; and has not requested a transfer back, id. ¶ 52, even though Amamchukwu is no longer with the Pre-Certification Department. See Doc. No. 44-9 at 3.

Nor could a reasonable jury infer that she was put to the Hobbesian choice of taking a demotion by transferring back to her old department or suffer in a hostile work environment. The undisputed evidence shows Tufts responded to each of her complaints and, there is no evidence that Amamchukwu touched Wiggins improperly after Tufts met with him on February 14th. "[A]n employee's displeasure at a personnel action cannot, standing alone, render it materially adverse," Billings, 515 F.3d at 53, and the fact that Wiggins chose, albeit reluctantly, to return to the Referrals Department underscores why, as a matter of law, this transfer cannot form the basis of a prima facie case. See Long v. Tillotson Health Care Corp., 968 F. Supp. 751, 756 (D.N.H. 2012) ("Under the circumstances of this case, the court finds as a matter of law that this slight reduction in pay does not amount to an adverse action on the part of the employer, particularly as plaintiff was given her choice among the three shifts.") (emphasis added).[3]

Wiggins similarly cannot rely on any failure in TMC's investigative process. Wiggins must show that but for her complaints about Amamchukwu to her superiors, TMC would not have enabled Amamchukwu's inappropriate behavior to continue. See Ponte, 741 F.3d at 321 (citing Univ. of Tex. Sw. Med. Ctr. V. Nassar, 133 S. Ct. 2517, 2534 (2013)). This she cannot do. The undisputed evidence reveals that: Wiggins did not know how TMC handled either of her initial complaints to Marsoobian, Doc. No. 44 ¶ 22; that Marsoobian reached out to her superior Landigan, id. ¶ 23; that Landrigan contacted HR, spoke with Amamchukwu, and reminded him of appropriate workplace behavior; and that—once Wiggins complained to McHugh—HR

---

[3] Additionally, Wiggins concedes that "Amamchukwu had no involvement in [her] decision to transfer back to the Referrals Department," Doc. No. 44 ¶ 43, thus rendering impossible any retaliation claim against him on this basis.

4

launched, within five business days, a full investigation, including multiple meetings with Amamchukwu which included several reminders about proper workplace conduct. Id. ¶¶ 30-31, 35-38. Even if one could quibble with the pace or protocol of TMC's investigation, nothing in the record indicates that any purported shortcomings occurred because Wiggins complained. Thus Wiggins cannot make out a prima facie case of retaliation against TMC, [4] and so the motion is ALLOWED for Counts III, VI, VIII, and X.

IV. CONCLUSION

For the foregoing reasons, the Court ALLOWS Defendants' Motion for Summary Judgment, Doc. No. 42, for Counts III, VI, VIII, and IX, and for Counts II and V EXCEPT INSOFAR as the claims of harassment or gender discrimination arise from the alleged hostile work environment. The Court DENIES the motion in all other respects. Defendants' Motion to Strike Plaintiff's Statement of Disputed Facts and All References Thereto in Her Opposition to Defendants' Motion for Summary Judgment, Doc. No. 53, is DENIED AS MOOT. The parties shall file a joint status report within fourteen days advising the Court whether all parties: (a) request referral to the Court's mediation program prior to trial of this matter; and/or (b) consent to the exercise of jurisdiction by the assigned magistrate judge (Judge Dein) for purposes of conducting the trial. If the parties consent, ordinarily any mediation requested by the parties would proceed before a different magistrate judge.

---

[4] Similarly, Wiggins cannot sustain a prima facie case against Amamchukwu based off his conduct after the investigation began. Wiggins testified to two instances where Amamchukwu retaliated. Doc. No. 44 ¶ 56. First, Amamchukwu "went and supposedly told another employee about [their] situation that was going on," and second, "from what was told to [Wiggins], he reported [to Ms. Marsoobian] that [Wiggins] was not at [her] desk." Id. Beyond the fact that Wiggins's speculative testimony is the only record evidence that these instances happened, and even assuming, without deciding, that they rise to the level of a materially adverse action, nothing indicates that Wiggins's complaints drove Amamchukwu in either of these instances.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge